1  JEFFREY C. KRAUSE (STATE BAR NO. 94053)
   SCOTT H. YUN (STATE BAR NO. 185190)
2  H. ALEXANDER FISCH (STATE BAR NO. 223211)
   MICHAEL S. NEUMEISTER (STATE BAR NO. 274220)
3  STUTMAN, TREISTER & GLATT
   PROFESSIONAL CORPORATION
4  1901 Avenue of the Stars, 12th Floor
   Los Angeles, CA 90067
5  Telephone:  (310) 228-5600
   Telecopy:   (310) 228-5788
6  Email:     jkrause@stutman.com; syun@stutman.com;
              afisch@stutman.com; mneumeister@stutman.com
7
   Reorganization Counsel
8  For Debtors and Debtors in Possession

9  Debtors' Mailing Address:
   23091 Mill Creek Drive
10 Laguna Hills, CA 92653-1258

11                 **UNITED STATES BANKRUPTCY COURT**

12                 **CENTRAL DISTRICT OF CALIFORNIA**

13                      **SANTA ANA DIVISION**

14  In re                                 )  Case No. 8:11-bk-24720-SC
                                          )
15  PACIFIC MONARCH RESORTS, INC.,        )  Chapter 11
    a California corporation,             )
16                                        )  Jointly Administered with Case Nos.
                                          )  8:11-bk-24724-SC; 8:11-bk-24725-SC;
17            Jointly Administered        )  8:11-bk-24727-SC; 8:11-bk-24729-SC;
              Debtors and Debtors in      )  8:11-bk-24731-SC
18            Possession.                 )
                                          )
19                                        )  **NOTICE OF MOTION AND MOTION FOR
                                          )  ORDER PURSUANT TO 11 U.S.C. §§ 105(a)
20                                        )  AND 363(b) APPROVING AMENDMENT
                                          )  TO DPM ASSET PURCHASE
21  Affects:                              )  AGREEMENT; DECLARATION OF
    ☐ Pacific Monarch Resorts, Inc. Only  )  KEITH MAIB IN SUPPORT THEREOF**
22  ☐ Vacation Interval Realty, Inc. Only )
    ☐ Vacation Marketing Group, Inc. Only )      Hearing
23  ☐ MGV Cabo, LLC Only                  )
    ☐ Desarrollo Cabo Azul, S. de R.L. de C.V. )  Date:  April 5, 2012
24     Only                               )  Time:  10:00 a.m.
    ☐ Operadora MGVM S. de R.L. de C.V. Only )  Place: Courtroom 5C
25  ☒ ALL DEBTORS                         )          411 West Fourth Street
                                          )          Santa Ana, CA 92701
26  _____  )

27

28

560794v1

**PLEASE TAKE NOTICE** that on April 5, 2012, at 10:00 a.m., in Courtroom 5C located at 411 West Fourth Street, Santa Ana, CA 92701-4593, the United States Bankruptcy Court for the Central District of California, the Honorable Scott C. Clarkson presiding, will hold a hearing on the *Motion for Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) Approving Amendment to DPM Asset Purchase Agreement* (the "Motion") filed by Pacific Monarch Resorts, Inc. ("PMR") and its affiliated debtors (collectively with PMR, the "Debtors").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Motion, the Debtors are seeking an order from the Court approving the "Amendment to Asset Purchase Agreement" (the "Amendment") which modifies Disclosure Schedule 11.14(a) ("Schedule 11.14(a)") to include the legal descriptions of two interests that the Debtors have in real property that were inadvertently omitted from the Asset Purchase Agreement (the "DPM APA") filed with the Court on October 24, 2011. Schedule 11.14(a) is intended to list all of the Debtors' owned real property (the "Owned Real Property"), which is to be deeded to DPM Acquisition, LLC ("DPM") under the DPM APA. The Amendment modifies Schedule 11.14(a) to include: (i) an undivided, fractional interest in real property owned by PMR in Las Vegas, Nevada, commonly referred to as the Cancun Resort; and (ii) a single condominium unit owned by PMR constituting unit A325 in the Cedar Breaks Lodge & Spa, Brian Head, Utah (collectively, the "Additional Parcels"). These parcels of property were always intended to be acquired by DPM and to represent part of the consideration to DPM under the DPM APA. By adding the legal descriptions of the two interests in real property, the proposed Amendment merely clarifies that the Additional Parcels shall be transferred to DPM upon the closing of the contemplated sale (the "Closing").

**PLEASE TAKE FURTHER NOTICE** a copy of the Amendment is attached to the Declaration of Keith Maib (the "Maib Declaration"), filed in support of this Motion, as Exhibit 1.

**PLEASE TAKE FURTHER NOTICE** that the Motion is supported by the accompanying Memorandum of Points and Authorities, the Maib Declaration, the record in these cases, and the arguments, evidence and representations that may be presented at or prior to the hearing on the Motion.

**PLEASE TAKE FURTHER NOTICE** that if you wish to oppose the Motion, you must file a written response with the Court and serve a copy of it on the undersigned counsel for the Debtors no later than 14 days prior to the hearing.

Dated: March 15, 2012

*/s/ Michael S. Neumeister*
JEFFREY C. KRAUSE,
SCOTT H. YUN,
H. ALEXANDER FISCH, and
MICHAEL S. NEUMEISTER, Members of
STUTMAN, TREISTER & GLATT
PROFESSIONAL CORPORATION
Reorganization Counsel for Debtors
and Debtors in Possession

560794v1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

Pacific Monarch Resorts, Inc. ("<u>PMR</u>")[1] and its affiliated debtors (collectively, the "<u>Debtors</u>") seek entry of an order approving the Amendment to Asset Purchase Agreement (the "<u>Amendment</u>").[2]  Pursuant to the Amendment, Schedule 11.14(a) shall be modified to include the legal descriptions of two parcels of real property (the "<u>Additional Parcels</u>") in the list of "Owned Real Property" that is to be transferred to DPM Acquisition, LLC ("<u>DPM</u>") at Closing.  First American Title Insurance Company ("<u>First American Title</u>"), which will issue title insurance policies to DPM at the Closing, discovered that the legal descriptions for the Additional Parcels were not included in the original Schedule 11.14(a).  The Amendment furthers the intent of both the Debtors and DPM (collectively, the "<u>Parties</u>") in drafting the DPM APA, as both Parties had negotiated the terms of the DPM APA on the understanding that the Additional Parcels were part of the sale to DPM.  Such an amendment is permissible under the DPM APA and the *Order Pursuant to Bankruptcy Code Sections 105, 363 and 365 Authorizing the Debtors to Sell Certain Assets to DPM Acquisition, LLC or to the Successful Bidder* [Docket No. 200] (the "<u>Sale Order</u>"), and is supported by the standards encompassed under Bankruptcy Code sections 105(a) and 363(b).

**II.**

**STATEMENT OF RELEVANT FACTS**

**A.**    **Petition Date and Jurisdiction.**

On October 24, 2011 (the "<u>Petition Date</u>"), the Debtors commenced the above-captioned chapter 11 cases by filing voluntary petitions under chapter 11 of the Bankruptcy Code.

Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtors are continuing to manage their financial affairs as debtors in possession.

---

[1]    Terms not otherwise defined herein shall have the meaning afforded to them in the preceding Motion.

[2]    In the event of any inconsistency between the description of the terms of the DPM APA or the Amendment (collectively, the "<u>Sale Agreements</u>") in this Motion and the actual Sale Agreements, the terms of the Sale Agreements shall govern, respectively.

560794v1

This Court has jurisdiction over these chapter 11 cases and this motion pursuant to 28 U.S.C. §§ 1334 and 157(b), and venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

**B.    The Debtors' Business.**

The Debtors operate a "timeshare" business.  The Debtors generate revenue primarily from the sale and financing of "vacation ownership points" (the "Points") in a timeshare program commonly known and marketed as "Monarch Grand Vacations" ("MGV").  MGV is a multi-location vacation timeshare program that establishes a uniform plan for the development, ownership, use and enjoyment of specified resort accommodations for the benefit of its members (the "Vacation Accommodations").[3]

The Points are the symbolic units of measurement of the rights of "owners" to enjoy the use rights to the Vacation Accommodations at the MGV-affiliated resorts (the "Underlying Resorts").  The Debtors sell Points to individuals principally domiciled in the United States.  The Debtors typically finance sales to new Owners, and the balance of the purchase price is paid to the Debtors by a promissory note, which is secured by the Points purchased.

As of the Petition Date, MGV owned Vacation Accommodations within the following Underlying Resorts: Palm Canyon Resort (Palm Springs), Riviera Oaks Resort & Racquet Club (Ramona), Riviera Beach & Spa Resort – Phases I and II (Dana Point), Riviera Shores Beach (Dana Point), Cedar Breaks Lodge (Brian Head), Tahoe Seasons Resort (South Lake Tahoe), Desert Isle of Palm Springs (Palm Springs), the Cancun Resort (Las Vegas), and the Cabo Azul Resort (San Jose del Cabo, Mexico).  Future Vacation Accommodations are currently in the pre-development stage in Kona, Hawaii and Las Vegas, Nevada.  Additionally, the Cabo Azul Resort has construction in progress on two buildings.

---

[3]  MGV is a nonprofit mutual benefit corporation whose members are timeshare owners, and it is administered by a board of directors elected by MGV members.  MGV is a legal entity, which is separate and distinct from the Debtors and is not a debtor in these bankruptcy cases.  The day-to-day operations of MGV, the Vacation Accommodations, and the Underlying Resorts should not be impacted by the commencement of the Debtors' chapter 11 cases.

**C.**    **The Sale of the Debtors' Assets to DPM.**

Concurrently with the filing of the Debtors' chapter 11 petitions, the Debtors filed the *Emergency Motion for Order Pursuant to Bankruptcy Code Sections 105, 363 and 365: (A) Authorizing the Debtors to Conduct Auction for Sale of Certain Assets to DPM Acquisition, LLC or to Successful Bidder; (B) Establishing and Approving Sale Procedures; (C) Scheduling Bid Deadline and Auction and Sale Hearing; (D) Approving Manner of Notice Pursuant to Bankruptcy Rule 2002; and (E) Authorizing the Sale of Certain Assets to the Successful Bidder* [Docket No. 17] (the "Sale Motion").  The Sale Motion, among other things, sought approval of procedures for the sale of certain of the Debtors' assets and, following an auction of such assets, approval of the sale of such assets to the winning bidder.  In conjunction with the Sale Motion, the Debtors submitted to the Court an executed copy of the DPM APA.  The DPM APA provides for the sale of substantially all of the Debtors' operating assets to DPM, and constituted the "stalking-horse bid" for such sale.

On December 7, 2011, the Court entered an order approving the sale procedures provided in the Sale Motion, including the procedures for auctioning the Debtors' assets.  The Debtors received no competing bids for their operating assets.  On January 12, 2012, the Court held a hearing on the Debtors' motion for approval of the sale of assets to DPM under the DPM APA.  After considering applicable pleadings filed in connection with the Sale Motion, and the arguments of counsel, the Court, on January 13, 2012, entered the Sale Order, approving the sale of the Debtors' assets under the terms of the DPM APA.

Pursuant to the Sale Order, DPM is to purchase the "Acquired Assets" from the Debtors, which include all of the Debtors' owned real property, defined under the DPM APA as the "Owned Real Property."  *See* Sale Order ¶ 3; DPM APA ¶¶ 3.60 5.04.  A specific list of the Owned Real Property was provided in Schedule 11.14(a), annexed to the DPM APA.  *See* DPM APA ¶ 11.14(a).  Any assets or property owned by the Debtors that is not to be transferred to DPM is specifically listed as an "Excluded Asset" under the DPM APA.  *Id.* at ¶ 7.  Pursuant to the plain text of the DPM APA, the Parties may mutually agree to the amendment of the DPM APA or its accompanying schedules (including Schedule 11.14(a)).  *See* DPM APA ¶¶ 17.09, 17.13.

560794v1

1    The right to amend or modify the DPM APA and its schedules is reinforced by the

2   Sale Order.  The Sale Order provides that the DPM APA "and any related agreements, documents or

3   other instruments may be modified, amended or supplemented by the parties thereto in accordance

4   with the terms thereof without further order of the Court, provided that any such modification,

5   amendment or supplement is not material and does not impair any rights and protections granted to

6   RFA under the Sale Procedures Order and this Sale Order."  *See* Sale Order ¶ 24.  On February 23,

7   2012, the Debtors, pursuant to paragraph 24 of the Sale Order and Bankruptcy Code sections 105(a),

8   363(b), and 365(a), filed a motion to modify Schedule 11.13(a)—the list of executory contracts and

9   nonresidential real property leases to be assigned to DPM [Docket No. 300].  No objections were

10   filed to this motion, and the Court approved it on the same date as the filing of this Motion, March

11   15, 2012.

12    The Debtors currently anticipate that the closing date for the sale of assets to DPM

13   (the "Closing Date") will be March 30, 2012.  However, the Closing Date may be extended by

14   consensual agreement between DPM and the Debtors.  If the Closing Date occurs before the Court

15   has an opportunity to consider this Motion, the Debtors request that the Court approve the

16   Amendment effective as of the Closing Date.

17   **D.    The Owned Real Property – Schedule 11.14(a).**

18    The DPM APA provides for the sale of Acquired Assets to DPM, including the

19   Owned Real Property, effective on the Closing Date.  *See* DPM ¶¶ 5, 5.04, 11.14(a).  Schedule

20   11.14(a) lists each parcel of real property that is to constitute the Owned Real Property.  At Closing,

21   a deed for all of the Owned Real Property is to be conveyed to DPM by the Debtors.  *Id.* at ¶ 9.02(d).

22    Paragraph 11.14(a) is included as one of the "Representations and Warranties by the

23   Sellers" under the DPM APA, and provides that "Schedule 11.14(a) of the Disclosure Schedule sets

24   forth the address and description of each parcel of Owned Real Property of each Seller."  *See* DPM

25   APA ¶ 11.14(a).  By its text, the DPM APA contemplates that the Debtors' representations and

26   warranties, including the above representation regarding the Owned Real Property, may be amended

27   as of the Closing Date so that Schedule 11.14(a) accurately reflects the Debtors' Owned Real

28   Property.  Specifically, under paragraph 11 of the DPM APA, the Debtors "represent and warrant . . .

7

1    that the statements contained in . . . Section 11 *shall be correct and complete as of the Closing

2    Date . . . ."  *See* DPM APA ¶ 11 (emphasis added).  The Debtors are to "use commercially

3    reasonable efforts to take all action and to do all things necessary in order to consummate and make

4    effective the transactions contemplated" under the DPM APA.  *Id.* at ¶ 12.01.  As a result, the

5    Debtors should be permitted to clarify Schedule 11.14(a) through the Amendment, so that they are

6    able to satisfy their representations and warranties under the DPM APA.

7              In sum, the Debtors have the right under the terms of the DPM APA to amend

8    Schedule 11.14(a) to accurately list the Owned Real Property.  By amending Schedule 11.14(a) to

9    include the Additional Parcels, the Debtors will be complying with their rights and obligations under

10   the DPM APA.

11   **E.      The Amendment – the Additional Parcels.**

12             By way of the Amendment, both the Debtors and DPM seek to clarify Schedule

13   11.14(a) and the DPM APA to reflect the Parties' original intent to include the Additional Parcels as

14   Owned Real Property.  A copy of the Amendment is attached to the Declaration of Keith Maib as

15   Exhibit "1."

16             The need to include the legal descriptions of the Additional Parcels in Schedule

17   11.14(a) was discovered by First American Title.  First American Title will issue title insurance

18   policies to DPM at closing, and in the course of its due diligence concluded that the legal

19   descriptions of the Additional Parcels should be included in the original Schedule 11.14(a).  By

20   adding the legal descriptions of the Additional Parcels, described below, the Debtors are clarifying

21   Schedule 11.14(a) to reflect the Parties' intentions with respect to the terms of the DPM APA.

22             One of the Additional Parcels consists of an undivided, fractional interest in real

23   property owned by PMR, commonly known as the Cancun Resort, in Las Vegas, Nevada.[4]  The

24   Cancun Resort is one of the several Vacation Accommodations that are used and operated under the

25   MGV timeshare program.

26

27

28   [4]    Legal descriptions of the Additional Parcels are provided in the Amendment.

8

560794v1

The other Additional Parcel consists of a single condominium unit owned by PMR in the Cedar Breaks Lodge & Spa ("Cedar Breaks"), in Brian Head, Utah.  Cedar Breaks is also one of the several Vacation Accommodations used and operated under the MGV timeshare program.  This unit has, until recently, been used by the Debtors as a sales office.

Both of the Additional Parcels are currently encumbered by liens held by Resort Finance America, LLC ("RFA").  Consequently, absent approval of the Amendment, such assets would remain in the estates subject to RFA's liens and not be available to the Debtors' other creditors.

Throughout the negotiations and drafting of the DPM APA, both Parties believed that the Additional Parcels were a part of the sale of the Debtors' assets to DPM.  As a result, the total consideration to be paid to the Debtors under the DPM APA reflects the Parties' negotiated value of both Additional Parcels, in addition to all of the other Acquired Assets.  The Debtors' lack of intent to exclude the Additional Parcels from the property transferred under the DPM APA is reflected by the fact that the Additional Parcels were not listed as Excluded Assets.

Only recently did the Parties discover that the Additional Parcels are not specifically listed as Owned Real Property.  By way of this Motion and the Amendment, the Debtors seek to clarify Schedule 11.14(a) so that, as of the Closing Date, DPM will acquire all real property owned by the Debtors as the Parties intended in drafting the DPM APA.

### III.

### ARGUMENT

Both the DPM APA and the Sale Order specifically contemplate the amendment of the DPM APA and its schedules as of the Closing Date.  Such amendment is particularly appropriate where, as is the case with the Additional Parcels, it is necessary to make accurate the Debtors' representations and warranties under the DPM APA.  Specifically, approval of the Amendment is necessary so that Schedule 11.14(a) accurately lists all Owned Real Property, which should include the Additional Parcels.  The Amendment is consistent with the standards set forth in Bankruptcy Code sections 105(a) and 363(b), and should therefore be approved.

**A.**     **Amending Schedule 11.14(a) to List the Additional Parcels is Permitted Under the DPM APA and the Sale Order.**

The Parties are permitted to amend Schedule 11.14(a) under the express language of the DPM APA and the Sale Order.

The language of the DPM APA contemplates the amendment of its schedules if the amendment is "in writing and signed by the Parties." *See* DPM APA ¶¶ 17.09, 17.13. The Amendment satisfies this requirement, and is consequently consistent with the express terms of the DPM APA.

Moreover, the DPM APA contemplates that changes may be made to the agreement's schedules, effective up to and as of the Closing Date. Specifically, the DPM APA provides that the representations and warranties in the agreement's schedules, including Schedule 11.14(a), are to be "correct and complete as of the Closing Date." *See* DPM APA ¶ 11. Therefore, the Debtors are required to ensure that Schedule 11.14(a), as of the Closing Date, accurately reflects the list of the Debtors' properties to be included as Owned Real Property. Without the Amendment, the list of Owned Real Property is not complete because it does not include the Additional Parcels. The Owned Real Property was intended to include all real property owned by the Debtors. As a result, to ensure that the Debtors' warranty with respect to the Owned Real Property is accurate, the Court should approve the Amendment.

Finally, the Sale Order provides that modifications or amendments to the DPM APA may be made, and, so long as such modifications are not "material," may even be made without Court approval. *See* Sale Order ¶ 24. Because the Amendment merely clarifies Schedule 11.14(a), such modification may constitute an immaterial change and consequently be permitted absent Court approval. However, so as to provide full transparency to the Court and the Debtors' creditors, the Debtors are seeking Court approval of the Amendment on regular notice.

In sum, in negotiating the terms of the Court-approved DPM APA, the Parties drafted provisions permitting the amendment of the agreement and applicable schedules "as of the Closing Date." The Amendment seeks to clarify, as of the Closing Date, the Debtors' Owned Real Property. Such an amendment is consistent with the terms of the DPM APA and the Sale Order.

560794v1

**B.**    **Amending Schedule 11.14(a) to List the Additional Parcels is Consistent with Bankruptcy Code Sections 105(a) and 363(b).**

Amending Schedule 11.14(a) is consistent with Bankruptcy Code sections 105(a) and 363(b).  The Amendment should therefore be approved.

Courts provide debtors significant discretion in determining which assets are to be sold under Bankruptcy Code section 363(b).  Generally, the sale of assets is permitted if the requested action is supported by the "sound business judgment" of the debtor.  *See, e.g.*, *240 North Brand Partners, Ltd. v. Colony GFP Partners, L.P. (In re 240 North Brand Partners, Ltd.)*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996) ("[D]ebtors who wish to utilize § 363(b) to dispose of property of the estate must demonstrate that such disposition has a valid business justification.").  Consequently, where debtors have provided valid, good faith business justifications for the sale of assets, debtors should be given discretion in deciding to implement such actions.

In these cases, the Court has already held that the Debtors are permitted to sell the real property owned by the Debtors to DPM, free and clear of liens.  *See* Sale Order ¶¶ 3, 5.  In negotiating the terms and consideration to be included under the sale, both the Debtors and DPM contemplated that DPM would purchase at Closing all real property owned by the Debtors, including the Additional Parcels.  Schedule 11.14(a) provides a list of such Owned Real Property.  And although the list of Owned Real Property did not include the Additional Parcels when Schedule 11.14(a) was initially filed with the Court on the Petition Date, the Parties have always contemplated the Additional Parcels to be a part of the transaction.  If the Parties intended to exclude the Additional Parcels from the sale, then these properties would have been listed as Excluded Assets under the DPM APA; which they are not.

In seeking approval of the Amendment, the Debtor is merely seeking clarification of the properties listed in Schedule 11.14(a), so as to reflect the expectations of the Parties involved.  As found by the Court, the sale of assets under the DPM APA is justified by a valid business justification, *see* Sale Order ¶¶ 3, 5 (citing 11 U.S.C. §§ 363(b), (f)), and so too is the modification of Schedule 11.14(a) to ensure that the consideration provided under the DPM APA is consistent with

11

the Parties' intention.  *See* 11 U.S.C. §§ 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").

The Debtors believe that approval of the Amendment will have no effect on the Debtors' unsecured creditors.  The Additional Parcels are encumbered by liens held by RFA.  As a result, if the Additional Parcels are not sold to DPM free and clear of such liens under Bankruptcy Code section 363(f), then these properties would likely remain in the estate subject to RFA's secured claim.  *See* 11 U.S.C. § 506.  The Additional Parcels consequently would be of no benefit to unsecured creditors even if the Amendment were not approved.

For the foregoing reasons, the Amendment is consistent with the terms of the DPM APA and the Sale Order, and satisfies the standards of Bankruptcy Code sections 105(a) and 363(b).  Consequently, the Debtors request Court approval of the Amendment

## IV.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an Order: (i) approving the Amendment, effective as of the Closing Date; and (ii) granting such other and further relief as is just and proper.


Dated:  March 15, 2012                    */s/ Michael S. Neumeister*
                                          JEFFREY C. KRAUSE,
                                          SCOTT H. YUN,
                                          H. ALEXANDER FISCH, and
                                          MICHAEL S. NEUMEISTER, Members of
                                          STUTMAN, TREISTER & GLATT
                                          PROFESSIONAL CORPORATION
                                          Reorganization Counsel
                                          for Debtors and Debtors in Possession

560794v1

1

## DECLARATION OF KEITH MAIB

2          1.          I am over 18 years of age and if called upon I would competently testify to the

3 matters set forth herein from my own personal knowledge.  I am a Senior Managing Director of

4 Mackinac Partners ("Mackinac").  Mackinac serves as Chief Restructuring Officer of Pacific

5 Monarch Resorts, Inc. ("PMR") and its affiliated debtors and debtors in possession (the "Debtors").

6 I have been serving as acting Chief Financial Officer of PMR since approximately March 15, 2010,

7 when its former Chief Financial Officer left the company.  As acting CFO of PMR, I am involved in

8 and supervise the ongoing business affairs, day-to-day business operations, financial condition, and

9 books and records of each of the Debtors.  Accordingly, I have personal knowledge of the Debtors'

10 books and records.

11          2.          I submit this declaration in support of the *Motion for Order Pursuant to 11*

12 *U.S.C. §§ 105(a) and 363(b) Approving Amendment to DPM Asset Purchase Agreement* (the

13 "Motion") filed by Pacific Monarch Resorts, Inc. and its affiliated debtors (collectively, the

14 "Debtors").  I am familiar with all of the real property owned by the Debtors, including that listed in

15 Schedule 11.14(a)[5] and the "Amendment to Asset Purchase Agreement" (the "Amendment").

16          3.          The Debtors operate a "timeshare" business.  The Debtors generate revenue

17 primarily from the sale and financing of "vacation ownership points" (the "Points") in a timeshare

18 program commonly known and marketed as "Monarch Grand Vacations" ("MGV").  MGV is a

19 multi-location vacation timeshare program that establishes a uniform plan for the development,

20 ownership, use and enjoyment of specified resort accommodations for the benefit of its members

21 (the "Vacation Accommodations").  MGV is a nonprofit mutual benefit corporation whose members

22 are timeshare owners, and it is administered by a board of directors elected by MGV members.

23          4.          The Points are the symbolic units of measurement of the rights of "owners" to

24 enjoy the use rights to the Vacation Accommodations at the MGV-affiliated resorts (the "Underlying

25 Resorts").  The Debtors sell Points to individuals principally domiciled in the United States.  The

26

27 _____
[5]    Any capitalized terms not specifically defined herein shall have the meaning set forth in the
28 Motion.

1    Debtors typically finance sales to new Owners, and the balance of the purchase price is paid to the

2    Debtors by a promissory note, which is secured by the Points purchased.

3          5.    As of the Petition Date, MGV owned Vacation Accommodations within the

4    following Underlying Resorts: Palm Canyon Resort (Palm Springs), Riviera Oaks Resort & Racquet

5    Club (Ramona), Riviera Beach & Spa Resort – Phases I and II (Dana Point), Riviera Shores Beach

6    (Dana Point), Cedar Breaks Lodge (Brian Head), Tahoe Seasons Resort (South Lake Tahoe), Desert

7    Isle of Palm Springs (Palm Springs), the Cancun Resort (Las Vegas), and the Cabo Azul Resort (San

8    Jose del Cabo, Mexico).  Future Vacation Accommodations are currently in the pre-development

9    stage in Kona, Hawaii and Las Vegas, Nevada.  Additionally, the Cabo Azul Resort has construction

10   in progress on two buildings.

11         6.    On October 24, 2011, the Debtors filed the Sale Motion.  The Sale Motion,

12   among other things, sought approval of procedures for the sale of certain of the Debtors' assets and,

13   following an auction of such assets, approval of the sale of such assets to the winning bidder.  In

14   conjunction with the Sale Motion, the Debtors submitted an executed Asset Purchase Agreement

15   between the Debtors and DPM Acquisition, LLC ("DPM," and with respect to the Asset Purchase

16   Agreement, the "DPM APA").[6]  The DPM APA provides for the sale of substantially all of the

17   Debtors' operating assets to DPM, and constituted the "stalking-horse bid" for such sale.

18         7.    On December 7, 2011, the Court entered an order approving the sale

19   procedures provided in the Sale Motion, including the procedures for auctioning the Debtors' assets.

20   The Debtors received no competing bids for their assets.  On January 12, 2012, the Court held a

21   hearing on the Debtors' motion for approval of the sale of assets to DPM under the DPM APA.

22   After considering applicable pleadings filed in connection with the Sale Motion, and the arguments

23   of counsel, the Court, on January 13, 2012, entered an order approving the sale of the Debtors' assets

24   pursuant to the terms of the DPM APA (the "Sale Order").

25         8.    Pursuant to the Sale Order, DPM is to purchase the "Acquired Assets" from

26   the Debtors, which include all of the Debtors' owned real property, defined under the DPM APA as

27         
  [6]    In the event of any inconsistency between the description of the terms of the DPM APA in this

28         Declaration and the DPM APA itself, the terms of the DPM APA shall govern.

the "Owned Real Property."  *See* Sale Order ¶ 3; DPM APA ¶¶ 3.60 5.04.  A specific list of the

Owned Real Property to be transferred at Closing was provided in Schedule 11.14(a), annexed to the

DPM APA.  *See* DPM APA ¶ 11.14(a).  Any assets or property owned by the Debtors that is not to

be transferred to DPM is specifically listed as an "Excluded Asset" under the DPM APA.  *Id.* at ¶ 7.

The Parties may mutually agree to the amendment of the DPM APA or its accompanying schedules

(including Schedule 11.14(a)).  *See* DPM APA ¶¶ 17.09, 17.13.

9.    The Sale Order includes a provision stating that the DPM APA "and any

related agreements, documents or other instruments may be modified, amended or supplemented by

the parties thereto in accordance with the terms thereof without further order of the Court, provided

that any such modification, amendment or supplement is not material and does not impair any rights

and protections granted to RFA under the Sale Procedures Order and this Sale Order."  *See* Sale

Order ¶ 24.  On February 23, 2012, the Debtors, pursuant to this provision of the Sale Order and

Bankruptcy Code sections 105(a), 363(b), and 365(a), filed a motion to modify Schedule 11.13(a)—

the list of executory contracts and nonresidential real property leases to be assigned to DPM under

the DPM APA [Docket No. 300].  No objections were filed to this motion, and the Court approved it

on the same date as the filing of this Motion, March 15, 2012.

10.    The projected closing date for the sale of assets to DPM (the "Closing Date")

is March 30, 2012.  However, the Closing Date may be extended by consensual agreement between

DPM and the Debtors.

11.    The DPM APA provides for the sale of Acquired Assets to DPM, including

the Owned Real Property, effective on the Closing Date.  *See* DPM ¶¶ 5, 5.04, 11.14(a).  Schedule

11.14(a) lists each parcel of real property that is to constitute the Owned Real Property.  At Closing,

a deed for all of the Owned Real Property is to be conveyed to DPM by the Debtors.  *Id.* at ¶ 9.02(d).

12.    Paragraph 11.14(a) is included as one of the "Representations and Warranties

by the Sellers" under the DPM APA, and provides that "Schedule 11.14(a) of the Disclosure

Schedule sets forth the address and description of each parcel of Owned Real Property of each

Seller."  *See* DPM APA ¶ 11.14(a).  By its text, the DPM APA contemplates that the Debtors'

representations and warranties, including the above representation regarding the Owned Real

15

1    Property, may be amended as of the Closing Date so that Schedule 11.14(a) accurately reflects the

2    Debtors' Owned Real Property.  Specifically, under paragraph 11 of the DPM APA, the Debtors

3    "represent and warrant . . . that the statements contained in . . . Section 11 *shall be correct and*

4    *complete as of the Closing Date . . . .*"  *See* DPM APA ¶ 11 (emphasis added).  The Debtors are to

5    "use commercially reasonable efforts to take all action and to do all things necessary in order to

6    consummate and make effective the transactions contemplated" under the DPM APA.  *Id.* at ¶ 12.01.

7    Based on these provisions, I believe the Debtors should be permitted to clarify Schedule 11.14(a)

8    through the Amendment, so that they are able to satisfy their representations and warranties under

9    the DPM APA.

10        13.    By way of the Amendment, both the Debtors and DPM (the "Parties") seek to

11    clarify Schedule 11.14(a) and the DPM APA so as to reflect the Parties' original intent to include the

12    Additional Parcels as Owned Real Property.  A copy of the Amendment is annexed hereto as Exhibit

13    "1."

14        14.    The need to include the legal descriptions of the Additional Parcels in

15    Schedule 11.14(a) was discovered by First American Title.  First American Title will issue title

16    insurance policies to DPM at closing, and in the course of its due diligence concluded that the legal

17    descriptions of the Additional Parcels should be included in the original Schedule 11.14(a).  By

18    adding the legal descriptions of the Additional Parcels, described below, the Debtors are clarifying

19    Schedule 11.14(a) to reflect the Parties' intentions with respect to the terms of the DPM APA.

20        15.    One of the Additional Parcels consists of an undivided, fractional interest in

21    real property owned by PMR, commonly known as the Cancun Resort, in Las Vegas, Nevada.  The

22    Cancun Resort is one of the several Vacation Accommodations that are used and operated under the

23    MGV timeshare program.

24        16.    The other Additional Parcel consists of a single condominium unit owned by

25    PMR in the Cedar Breaks Lodge & Spa ("Cedar Breaks"), in Brian Head, Utah.  Cedar Breaks is

26    also one of the several Vacation Accommodations used and operated under the MGV timeshare

27    program.  This unit has, until recently, been used by the Debtors as a sales office.

28        17.    Both of the Additional Parcels are currently encumbered by RFA's liens.

16

18.    Throughout the negotiations and drafting of the DPM APA, both Parties believed that the Additional Parcels were a part of the sale of the Debtors' assets to DPM.  As a result, the total consideration to be paid to the Debtors under the DPM APA reflects the Parties' negotiated value of both Additional Parcels, in addition to all of the other Acquired Assets.  The Debtors' lack of intent to exclude the Additional Parcels from the property transferred under the DPM APA is reflected by the fact that the Additional Parcels were not listed as Excluded Assets.

19.    Only recently did the Parties discover that the Additional Parcels are not specifically listed as Owned Real Property.  By way of the Motion and the Amendment, the Debtors are seeking to clarify Schedule 11.14(a) so that, as of the Closing Date, DPM will acquire all real property owned by the Debtors, as the Parties intended in drafting the DPM APA.

20.    I believe that the sale of the Additional Parcels, as a part of the DPM APA, is supported by the sound business judgment of the Debtors.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of March, 2012, at Laguna Hills, California.


_____

KEITH MAIB

560794v1

# Exhibit 1

## AMENDMENT TO ASSET PURCHASE AGREEMENT

This Amendment to Asset Purchase Agreement ("Amendment") is made by and among the undersigned parties as of March __, 2012.

## RECITALS:

A.  A certain Asset Purchase Agreement (as previously amended, the "Agreement") was made and entered into as of the 24th date of October, 2011, by and among Pacific Monarch Resorts, Inc. ("PMR"), Vacation Interval Realty, Inc., Vacation Marketing Group, Inc., MGV Cabo, LLC, Desarrollo Cabo Azul, S. de R.L. de C.V., and Operadora MGVM S. de R.L. de C.V. (together with PMR, collectively, the "Sellers"), and DPM Acquisition, LLC (the "Buyer"). Terms used but not defined in this Amendment have the meanings given to them in the Agreement.

B.  Section 5.04 of the Agreement provides that Buyer is buying, and the Sellers are selling, all Owned Real Property.  Schedule 11.14(a) to the Agreement purported to set forth a schedule of the Owned Real Property (the "Real Property Schedule").

C.  The Buyer and Sellers have determined that certain real property owned by the Sellers that was intended to be included in the definition of Owned Real Property and on the Real Property Schedule, was inadvertently omitted.

D.  This Amendment constitutes a written instrument signed by each of the Sellers and the Buyer needed to amend the Agreement to include the inadvertently omitted real property as part of the Agreement.

E.  The parties hereto wish to enter into this Amendment to provide for certain amendments to and under the Agreement upon the terms and conditions contained herein.

## AGREEMENT:

With reference to the above Recitals, and in consideration of the mutual covenants herein contained, the undersigned parties hereto agree as follows:

I.  **Amendments to the Agreement.**

A**.**    Schedule 11.14(a) is hereby amended to include the following two parcels of real estate (the "Additional Parcels"):

1.  That certain real property owed by the PMR in Las Vegas, Clark County, Nevada commonly referred to as Cancun Resort and legally described as follows:

PARCEL A:  AN UNDIVIDED 6,765,096/13,797,576 FEE INTEREST IN AND TO THAT CERTAIN REAL PROPERTY IN CLARK COUNTY, STATE OF NEVADA, LEGALLY DESCRIBED AS FOLLOWS:
PARCEL 1:  THE NORTH HALF (N 1/2) OF THE NORTH HALF (N 1/2) OF THE SOUTHEAST QUARTER (SE 1/4) OF THE NORTHEAST QUARTER (NE 1/4) OF SECTION 17, TOWNSHIP 22 SOUTH, RANGE 61 EAST, M.D.B.M.; EXCEPTING THEREFROM THE NORTHERLY 30 FEET AND THE WESTERLY 30 FEET AS

CONVEYED TO THE COUNTY OF CLARK, STATE OF NEVADA BY DOCUMENT
NO. 38997, BOOK 49, RECORDED JULY 20, 1970. FURTHER EXCEPTING
THEREFROM THAT CERTAIN SPANDREL AREA SITUATE WITHIN THE
NORTHWEST CORNER OF THE NORTH HALF (N 1/2) OF THE NORTH HALF (N 1/2)
OF THE SOUTHEAST QUARTER (SE 1/4) OF THE NORTHEAST QUARTER (NE 1/4)
OF SECTION 17, TOWNSHIP 22 SOUTH, RANGE 61 EAST, M.D.M., NEVADA; ALSO
BEING THE SOUTHEAST CORNER OF THE INTERSECTION OF SHELBOURNE
AVENUE AND PARVIN STREET, BOUNDED AS FOLLOWS; ON THE NORTH BY
THE SOUTH LINE OF THE NORTH THIRTY FEET (30.00') THEREOF; ON THE WEST
BY THE EAST LINE OF THE WEST THIRTY FEET (30.00') THEREOF; AND ON THE
SOUTHEAST BY THE ARC OF A CURVE CONCAVE SOUTHEASTERLY, HAVING A
RADIUS OF FIFTEEN FEET (15.00') AND BEING TANGENT TO THE SOUTH LINE
OF SAID NORTH THIRTY FEET (30.00') AND TO THE EAST LINE OF SAID WEST
THIRTY FEET (30.00'). FURTHER EXCEPTING THEREFROM ANY PORTION OF
SAID LAND LYING WITHIN U.S. HIGHWAY NO. 91. TOGETHER WITH THAT
PORTION OF U.S. HIGHWAY NO. 91 AS ABANDONED BY STATE OF NEVADA
DEPARTMENT OF HIGHWAYS IN AN ABANDONMENT RECORDED JANUARY 21,
1982, IN BOOK 1513 OF OFFICIAL RECORDS, CLARK COUNTY, NEVADA
RECORDS AS DOCUMENT NO. 1472121. EXCEPTING THEREFROM ALL OIL AND
GAS AS RESERVED IN THE DEED FROM THE UNITED STATES OF AMERICA,
RECORDED JUNE 18, 1959 IN BOOK 202 OF OFFICIAL RECORDS AS DOCUMENT
NO. 164313.

PARCEL 2: THE SOUTH HALF (S 1/2) OF THE NORTH HALF (N 1/2) OF THE
SOUTHEAST QUARTER (SE 1/4) OF THE NORTHEAST QUARTER (NE 1/4) OF
SECTION 17, TOWNSHIP 22 SOUTH, RANGE 61 EAST, M.D.B.M.; EXCEPTING
THEREFROM THE WESTERLY 30 FEET AS CONVEYED TO THE COUNTY OF
CLARK, STATE OF NEVADA BY DOCUMENT NO. 38997, BOOK 49, RECORDED
JULY 20, 1970. FURTHER EXCEPTING THEREFROM ANY PORTION OF SAID LAND
LYING WITHIN U.S. HIGHWAY 91. TOGETHER WITH THAT PORTION OF U.S.
HIGHWAY NO. 91 AS ABANDONED BY STATE OF NEVADA DEPARTMENT OF
HIGHWAYS IN AN ABANDONMENT RECORDED JANUARY 21, 1982, IN BOOK
1513 OF OFFICIAL RECORDS, CLARK COUNTY, NEVADA RECORDS AS
DOCUMENT NO. 1472121. EXCEPTING THEREFROM ALL OIL AND GAS AS
RESERVED IN THE DEED FROM THE UNITED STATES OF AMERICA, RECORDED
JUNE 18, 1959 IN BOOK 202 OF OFFICIAL RECORDS AS DOCUMENT NO. 164313.

EXCEPTING FROM PARCELS 1 AND 2 THE EXCLUSIVE RIGHT TO USE AND
OCCUPY ANY "DEDICATED UNIT" OF SAID PROPERTY DURING ALL "USE
PERIODS" AND "SERVICE PERIODS" AS SAID QUOTED TERMS ARE DEFINED IN
THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR
CANCUN RESORT RECORDED FEBRUARY 24, 1999 IN BOOK 990224 AS
INSTRUMENT NO. 997 OFFICIAL RECORDS OF CLARK COUNTY, NEVADA, AS
THE SAME MAY BE AMENDED FROM TIME TO TIME (THE "DECLARATION").
ALSO EXCEPTING THEREFROM THOSE CERTAIN EASEMENTS DESCRIBED IN
PARAGRAPHS 2.6, 2.7, 2.8, 2.9, 2.10 AND 2.11 OF THE DECLARATION. ALSO
EXCEPTING THEREFROM THE NON-EXCLUSIVE RIGHTS TO USE THE "COMMON
AREAS" AND "SUPPORT AREAS" AS DEFINED IN THE DECLARATION.
EXCEPTING THEREFROM 40,233 +/- SQUARE FEET, MORE OR LESS AS
CONVEYED TO THE COUNTY OF CLARK, STATE OF NEVADA BY DOCUMENT
RECORDED MARCH 15, 2000 IN BOOK 20000315 AS INSTRUMENT NO. 00954.

and

PARCEL B: THE EXCLUSIVE RIGHT AND EASEMENT TO USE AND OCCUPY
ANY "UNDEDICATED UNIT" AND THE "COMMON FURNISHINGS" THEREIN,
TOGETHER WITH THE NON-EXCLUSIVE RIGHT TO OCCUPY THE "COMMON
AREA", IN PARCEL A ABOVE UNDER THE "VACATION OWNERSHIP PROGRAM"
DURING ONE OR MORE "USE PERIODS", IN ACCORDANCE WITH THE
DECLARATION AND THE "RULES AND REGULATIONS", AS EACH OF SAID
TERMS ARE DEFINED IN THE DECLARATION REFERRED TO ABOVE."

2.      That certain real property owned by PMR constituting unit A325 in the Cedar Breaks Lodge & Spa and legally described as follows:

> CONDOMINIUM UNIT NO. A325 CONTAINED WITHIN THE BRIAN HEAD NORTH CONDOMINIUMS (SECOND AMENDED PLAT), A CONDOMINIUM PROJECT AS THE SAME IS IDENTIFIED IN THE RECORD OF SURVEY MAP RECORDED IN THE RECORDS OF THE COUNTY RECORDER OF IRON COUNTY, UTAH, AS ENTRY NO. 44637 1, IN BOOK 372, PAGE 267 (AS SAID RECORD OF SURVEY MAP MAY HAVE HERETOFORE BEEN AMENDED OR SUPPLEMENTED) AND AS DEFINED AND DESCRIBED IN THE SECOND AMENDED DECLARATION OF CONDOMINIUM FOR BRIAN HEAD NORTH CONDOMINIUMS, RECORDED IN THE OFFICIAL RECORDS FOR IRON COUNTY, UTAH IN BOOK 372, PAGE 743-814 (AS SAID DECLARATION MAY HAVE HERETOFORE BEEN AMENDED OR SUPPLEMENTED). TOGETHER WITH THE APPURTENANT UNDIVIDED OWNERSHIP INTEREST IN AND TO THE COMMON AREAS AND FACILITIES AS MORE PARTICULARLY DESCRIBED IN SAID DECLARATION. EXCEPTING THEREFROM ALL COAL, OIL, GAS AND/OR OTHER MINERALS IN, ON OR UNDER SAID LAND, TOGETHER WITH THE RIGHT OF INGRESS AND EGRESS FOR THE PURPOSE OF EXPLORING AND/OR REMOVING THE SAME.

B.      The definition of the term "Owned Real Property" is hereby modified to include the Additional Parcels; and

C.      The representations and warranties of the Sellers contained in Section 11.14 of the Agreement apply to the Additional Parcels and are correct and complete as of the date hereof and will be correct and complete as of the Closing Date with respect thereto.

## II.      General Provisions.

A.      <u>Original Agreement</u>.  All other terms and conditions of the Original Agreement remain in full force and effect.

B.      <u>Effectiveness</u>.   Upon execution of this Amendment by the undersigned, this Amendment shall be effective with respect to each of the Sellers and the Buyer under the Original Agreement.

C.      <u>Counterparts</u>.  This Amendment may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

D.      <u>Successors and Assigns</u>.  This Amendment shall be binding upon and inure to the benefit of the parties hereto, their legal representatives, successors and permitted assigns.

E.      <u>Governing Law</u>.  This Amendment shall be interpreted and construed in accordance with the law of the State of California.

**[Signature pages follow.]**

**IN WITNESS WHEREOF**, the parties hereto have executed this Amendment to Asset Purchase Agreement through their duly authorized officers as of the date first written above.

**SELLERS:**

Dated: March \_\_, 2012                    PACIFIC MONARCH RESORTS, INC.

By: _____
Name: _____
Its: _____

Dated: March \_\_, 2012                    VACATION INTERVAL REALTY, INC.

By: _____
Name: _____
Its: _____

Dated: March \_\_, 2012                    VACATION MARKETING GROUP, INC.

By: _____
Name: _____
Its: _____

Dated: March \_\_, 2012                    MGV CABO, LLC

By: _____
Name: _____
Its: _____

*[Signature Page to Amendment to Asset Purchase Agreement]*

Dated: March __, 2012                    OPERADORA MGVM S. DE R.L. DE C.V.


                                         By:      _____
                                         Name:    _____
                                         Its:     _____


Dated: March __, 2012                    DESARROLLO CABO AZUL, S. de R.L. de C.V.


                                         By:      _____
                                         Name:    _____
                                         Its:     _____



                                         **THE BUYER:**

Dated: March __, 2012                    DPM ACQUISITION, LLC


                                         By:      _____
                                         Name:    David F. Palmer
                                         Its:     President




                    *[Signature Page to Amendment to Asset Purchase Agreement]*

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
1901 Avenue of the Stars, 12th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document described as **NOTICE OF MOTION AND MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 105(A) AND 363(B) APPROVING AMENDMENT TO DPM ASSET PURCHASE AGREEMENT; DECLARATION OF KEITH MAIB IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **March 15, 2012** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **March 15, 2012**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 15, 2012 | Joanne B. Stern | /s/ Joanne B. Stern |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- Daren Brinkman    office@brinkmanlaw.com
- Ronald K Brown    rkbgwhw@aol.com
- Frank Cadigan    frank.cadigan@usdoj.gov
- Eric C Cotton    hsmith@ddr.com
- Meredith R Edelman    meredith.edelman@dlapiper.com
- Christine R Etheridge    christine.etheridge@ikonfin.com
- H Alexander Fisch    afisch@stutman.com
- Michael G Fletcher    mfletcher@frandzel.com, efiling@frandzel.com;shom@frandzel.com
- Marshall F Goldberg    mgoldberg@glassgoldberg.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;shom@frandzel.com
- Brian D Huben    brian.huben@kattenlaw.com,
  carole.levine@kattenlaw.com;donna.carolo@kattenlaw.com;laura.nefsky@kattenlaw.com
- Sidney P Levinson    slevinson@dl.com
- Shawn C Luna    sluna@sidley.com
- Zachary Mosner    bcumosner@atg.wa.gov
- Michael S Neumeister    mneumeister@stutman.com
- R G Pagter    gibson@pagterandmiller.com, pandm@pagterandmiller.com;pagterandmiller@yahoo.com
- Kirk Pearson    kirk@brinkmanlaw.com
- Laura J Portillo    office@brinkmanlaw.com
- Martha E Romero    Romero@mromerolawfirm.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Joshua D Wayser    joshua.wayser@kattenlaw.com, kim.johnson@kattenlaw.com
- Gilbert B Weisman    notices@becket-lee.com
- John D Whitcombe    gwtllp@gmail.com, cliu@gwtllp.com
- Scott H Yun    syun@stutman.com

**SERVED BY U.S. MAIL OR OVERNIGHT MAIL**

**Served by Federal Express:**

The Honorable Scott Clarkson
United States Bankruptcy Court
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

**Served by U.S. Mail**

| DEBTOR | Pacific Monarch Resorts, Inc.<br>Attn: Keith Maib/Nishant Machado<br>23091 Mill Creek Dr.<br>Laguna Hills, CA 92653-1258 | Counsel to the Committee:<br>Darren Brinkman<br>Brinkman Portillo, PC<br>4333 Park Terrace Drive, Ste. 205<br>Westlake Village, CA 91361 |
|---|---|---|
| | INSURED DEPOSITORY INSTITUTIONS AND SECURED CREDITORS | RFA PMR LoanCo, LLC<br>Clifton M. Dugas, II<br>Authorized Collateral Processing Agent<br>100 Crescent Court, Ste. 260<br>Dallas, TX 75201 |

| | | |
|---|---|---|
| Counsel to RFA PMR LoanCo. & Resort Finance America LLC<br>Dewey & LeBoeuf LLP<br>Sidney P. Levinson/David Smith<br>333 So. Grand Ave., Ste. 2600<br>Los Angeles, CA 90071-1530 | California Bank & Trust<br>c/o Frandzel Robins Bloom & Csato, L.C.<br>Michael G. Fletcher<br>6500 Wilshire Blvd., 17th Fl.<br>Los Angeles, CA 90048-4920 | California Bank & Trust<br>Attn: Thomas P. Betournay<br>21800 Burbank Blvd., Suite 160<br>Woodland Hills, CA 91367 |
| First Hawaiian Bank Kona Branch<br>Attn: Victoria Hasty, Authorized Officer<br>74-5593 Palani Road<br>Kailua-Kona, HI 96740 | Counsel to Fifth Third Bank<br>Marshall Goldberg, Esq.<br>Glass & Goldberg<br>21700 Oxnard Street, Suite 430<br>Woodland Hills, CA 91367-3665 | Branch Bank & Trust<br>Attn: Matthew J. Grau<br>Capital Markets Corporate Banking<br>200 W. 2nd Street, 16th Floor<br>Winston-Salem, NC 27101 |
| Counsel to Branch Bank & Trust<br>Bob Pryor<br>McGuire Woods LLP<br>PO Box 31247<br>Charlotte, NC 28231 | Counsel to Branch Bank & Trust<br>J. Trevor Johnston<br>McGuire Woods LLP<br>PO Box 31247<br>Charlotte, NC 28231 | Counsel to BB&T Capital Markets<br>Bob Pryor<br>McGuire Woods LLP<br>201 N. Tryon St.<br>Charlotte, NC 28202 |
| Wells Fargo Bank, N.A.<br>Attn: Peter Favorite<br>625 Marquette Ave.<br>Minneapolis, MN 55402 | Counsel to Wells Fargo Bank, N.A.<br>Faegre Baker Daniels LLP<br>Attn: Christopher Harayda<br>2200 Wells Fargo Ctr. 90 S. Seventh St.<br>Minneapolis, MN 55402 | GOVERNMENTAL AGENCIES |
| Office of the U.S. Trustee<br>Attn: Frank Cadigan<br>411 West Fourth St., Ste. 9041<br>Santa Ana, CA 92701 | Internal Revenue Service<br>PO Box 7346<br>Philadelphia, PA 19104-7346 | REQUESTS FOR NOTICE |
| Counsel to The Macerich Company<br>Katten Mutchen Rosenman LLP<br>c/o Thomas J. Leanse<br>Brian D. Huben / Jessica M. Mickelsen<br>2029 Century Park East, Ste 2600<br>Los Angeles, CA 90067-3012 | Counsel to Mark Post:<br>Morton M. Rosenfeld, Esq.<br>Rosenfeld, Wolff & Klein<br>1901 Avenue of the Stars, Ste. 500<br>Los Angeles, CA 90067 | John Whitcombe, Esq.<br>Greenberg, Whitcombe & Takeuchi<br>21515 Hawthorne Blvd., Suite 450<br>Torrance, CA 90503 |
| Counsel to DPM Acquisition:<br>Peter A. Siddiqui, Esq.<br>Katten Muchin Rosenman LLP<br>525 West Monroe St.<br>Chicago, IL 60661-3693 | Christine R. Etheridge<br>Bankruptcy Administration<br>Ikon Financial Services<br>1738 Bass Rd<br>PO Box 13708<br>Macon, GA 31208-3708 | Counsel to Guggenheim Corporate Funding:<br>Lee S. Attanasio, Shawn L. Luna<br>Sidley Austin LLP<br>555 W. Fifth St., Suite 4000<br>Los Angeles, CA 90013-1010 |
| Realty Associates Fund IX, L.P.<br>c/o Ronald K. Brown, Jr.<br>Law Offices of Ronald K. Brown, Jr.<br>901 Dove St., Suite 120<br>Newport Beach, CA 92660-3018 | Zachary Mosner, Esq.<br>Assistant Attorney General<br>State of Washington<br>800 Fifth Avenue, Suite 2000<br>Seattle, WA 98104-3188 | Maurice Grayton<br>4351 33rd St<br>San Diego, CA 92104 |
| County of Riverside<br>Martha E. Romero<br>Romero Law Firm<br>BMR Professional Building<br>6516 Bright Ave.<br>Whittier, CA 90601 | Counsel for DDR Urban LP<br>Eric C. Cotton, Esq.<br>DDR Corp.<br>3300 Enterprise Pkwy<br>PO Box 228042<br>Beachwood, OH 44122 | Counsel for Coventry II DDR Buena Park LLC:<br>Eric C. Cotton, Esq.<br>DDR Corp.<br>3300 Enterprise Pkwy<br>PO Box 228042<br>Beachwood, OH 44122 |

| | | |
|---|---|---|
| Nevada Real Estate Division<br>2502 E Sahara Ste 102<br>Las Vegas, NV 89104 | Utah Division of Real Estate<br>160 East 300 South, 2nd Fl.<br>PO Box 146711<br>Salt Lake City, UT 84111-2305 | |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*
560960v1

**9013-3.1.PROOF.SERVICE**